United States Court of Appeals

For the Eighth Circuit

_____

No. 24-1406
_____

Home Depot U.S.A., Inc.

*Petitioner*

v.

National Labor Relations Board

*Respondent*

------------------------------

Chamber of Commerce of the United States of America

*Amicus Curiae*

Cato Institute; Retail Litigation Center, Inc.; Coalition for a Democratic Workplace and 5 Other Associations Representing Employers

*Amici on Behalf of Petitioner*

American Federation of Labor and Congress of Industrial Organizations

*Amicus on Behalf of Respondent*
_____

No. 24-1513
_____

Home Depot U.S.A., Inc.

*Respondent*

v.

National Labor Relations Board

*Petitioner*

------------------------------

Chamber of Commerce of the United States of America

*Amicus Curiae*

Cato Institute; Retail Litigation Center, Inc.; Coalition for a Democratic Workplace and 5 Other Associations Representing Employers

*Amici on Behalf of Respondent*

American Federation of Labor and Congress of Industrial Organizations

*Amicus on Behalf of Petitioner*

_____

National Labor Relations Board

_____

Submitted: June 11, 2025
Filed: November 6, 2025

_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.

_____

LOKEN, Circuit Judge.

Home Depot, a home-improvement retailer, petitions for review of an order of the National Labor Relations Board that Home Depot violated Sections 7 and 8(a)(1) of the National Labor Relations Act, 29 U.S.C. §§ 157 and 158(a)(1), when it directed an employee of its store in New Brighton, Minnesota, a suburb of Minneapolis, to remove the display of "BLM" from the required Home Depot uniform. The administrative law judge (ALJ) concluded that the Board's general counsel failed to prove a violation of Section 8(a)(1). The Board disagreed. Rejecting Home Depot's defenses, the Board held in a 3-1 decision that the employee engaged in concerted protected activity and was constructively discharged for refusing to remove the display. Home Depot USA, Inc., 373 NLRB No. 25 (Feb. 21, 2024).

The parties and their knowledgeable *amici* have briefed and argued many issues. We conclude the Board improperly evaluated the "special circumstances" and business justification defenses asserted by Home Depot in defending an action taken in the wake of George Floyd's murder in Minneapolis following civil unrest that directly affected this particular store, and the more general divisive societal responses to the Black Lives Matter ("BLM") movement. These circumstances were unlike the more typical union organizing dispute at issue in Cintas Corp. v. NLRB, 589 F.3d 905, 914 (8th Cir. 2009). They were "special circumstances [that] justify a prohibition on wearing" this kind of message in a customer-facing job at this location during this period of time. Id. Accordingly, we grant the petition for review and decline to rule on other issues.

**I. Background**

Part of Home Depot's required employee uniform is its signature orange apron featuring a well-recognized Home Depot insignia. Home Depot allows -- indeed encourages -- staff to customize their aprons with personalized pins, illustrations, and

-3-

written messages that will appear along with the Home Depot insignia. Home Depot's dress code policies reiterate in four sections that the display of "causes or political messages unrelated to the workplace" is "unacceptable." The section addressing appropriate apron appearance specifically addresses the issue:

> The Home Depot apron is the brand of the Company. Customers identify us by it, and it symbolizes our commitment to customer service. To be most effective, associates wearing an apron must present a consistent image to the public. While The Home Depot respects the personal opinions and beliefs held by associates and customers, *the apron is not an appropriate place to promote or display religious beliefs, causes or political messages unrelated to workplace matters*, or messages that would violate our policies on discrimination and unlawful harassment.
>
> Associate dress must not present a safety hazard. . . . When visiting a store location, every associate must comply with the store dress code. Any request to deviate from this policy MUST be approved by the Regional Human Resources Director. Any APS request to deviate from this policy must be approved by the Regional Director of Operations.

(Emphasis added.)

Home Depot hired the employee at issue in August 2020 as a sales specialist at its New Brighton, Minnesota store.[1] Approximately three months before, George Floyd was murdered less than seven miles from the store while in the custody of Minneapolis police officers. Reacting to this tragic incident and other instances of police use of force, the Black Lives Matter movement and its insignia became a

---

[1] Home Depot hired the employee under the name Antonio Morales, and that is the name appearing in the ALJ and Board decisions. The employee, who identifies as Hispanic and a person of color, has since adopted the name Caro Linda Bo and uses they/them pronouns. We will use the name Bo in this opinion.

Appellate Case: 24-1406    Page: 4    Date Filed: 11/06/2025 Entry ID: 5575556

prominent symbol for protesting police violence. Within two months of being hired, Bo joined other employees in adorning "BLM" on their aprons. Bo testified he wrote "BLM" in black marker on the front of the apron to be "approachable" and "as a symbol of solidarity" against "prejudice and racism."

Other racial issues concerned employees at the New Brighton store that autumn and winter. Employee Amy Gumm frequently engaged in racially discriminatory conduct toward customers and employees of color, precipitating conversations between employees about her treatment of people of color and prompting multiple employee complaints to supervisors. One complaint in mid-September was elevated to human resources and store management. Although unknown to employees who complained of Gumm's misconduct, the store engaged Gumm in performance discussions, coaching, and counseling regarding the issue over the following months. But complaints to management continued and Gumm's behavior remained an issue for store employees until she was discharged in late February 2021.

In February 2021, someone vandalized the Black History Month display in the employee breakroom by tearing down a poster of prominent Black historical figures, ripping up flash cards about Black historical figures, and putting the display in the trash. An assistant store manager repaired the display and reported the incident to management and supervisors via email. After discussions with others, Bo told the assistant manager his email response was inadequate and urged a storewide conversation to ensure coworkers of color felt safe. The assistant store manager told employees the email was sufficient.

A few days later, the display was again vandalized. A different assistant store manager emailed employees and supervisors about the incident. Bo with input from others renewed the call for a storewide discussion, stating that employees were feeling "uncomfortable and disrespected," that "Home Depot needs to acknowledge that these actions will not be condoned," and that "our fellow coworkers of color

-5-

need to feel the support from the store they work for." The store manager and an assistant manager met with Bo to address the issue. During the meeting, the manager noticed the "BLM" on Bo's apron and informed Bo that the lettering presented a social or political cause, violated the dress code policy, and had to be removed. The manager said that allowing a "BLM" message at work would also require permitting other symbols employees wanted, including a swastika. The manager said he believed "Black lives matter" and "all lives matter" but Bo could not return to work until the lettering was removed. Other options were suggested, including wearing a diversity, equity, and inclusion pin or a "respect for all" pin.

The next day, the district manager and district human resources manager met with Bo about incidents in the store and the multiple employee reports to management about these issues. The district manager acknowledged the store's long delayed response had "failed" Bo and other employees, noted there would be an investigation, asked for confidentiality, and encouraged Bo to spearhead store efforts to celebrate people of color. Transitioning to the "BLM" on Bo's apron, the manager asked why Bo put the lettering on the apron. Bo responded: "I put it on as a signal to show that I support Black people; I support people of color. And I think that what happened over the course of the summer, I think that needs to be addressed and how we need to continue to support Black people."

The district manager reaffirmed that the message violated Home Depot's dress code and that Bo could not work while wearing it, noting that allowing the BLM message would require permitting offensive symbols like swastikas. He told Bo to go home and not return until he found another way to express these beliefs. Bo disagreed, insisting that "BLM" was the "best way" at this time to show support for people of color in the store. The district manager suggested alternatives such as pins supporting Black History Month or diversity and inclusion. Bo declined: "It seems like no one is listening . . . . It's been six months, and nothing has been done." Alternative ways to show "respect for . . . Black people" such as the Black History

Appellate Case: 24-1406     Page: 6     Date Filed: 11/06/2025 Entry ID: 5575556

Month display had been vandalized with little response from the store, demonstrating that alternatives were ineffective. Bo refused to remove the BLM lettering on the apron, stating that "willing to be fired over this" would be a "a great example" and was "going to make the biggest impact" in the store.

Bo resigned the next day. Home Depot later instructed other employees that its dress code policy required that "BLM" lettering on their aprons be removed. Home Depot had previously barred employees from displaying "Blue Lives Matter," "Thin Blue Line," and other related messages on aprons and clothing at work.

## II. The NLRB Proceedings.

Shortly after resigning, Bo filed unfair labor practices charges with the Board. After investigating, the Board's General Counsel filed a complaint alleging that Home Depot violated Sections 7 and 8(a)(1) of the NLRA by prohibiting employees from displaying "BLM" on their aprons. Section 7 protects employee rights to self-organize, join or assist labor organizations, bargain collectively, "and *to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection*" (emphasis added). The complaint alleged that displaying "BLM" on employee aprons is activity protected by Section 7. Section 8(a)(1) prohibits employers from taking actions that "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" in Section 7. The complaint alleged that requiring Bo to remove the BLM lettering added to his apron or to stop working at the New Brighton store violated this prohibition.

In response, Home Depot argued that Bo's BLM messaging was not Section 7 protected activity because it is not concerted activity with a "reasonable and direct nexus" to mutual aid or protection in the workplace, and that requiring removal of the message was justified under the NLRA's "special circumstances" doctrine, which

-7-

permits employers to bar otherwise protected messages when they conflict with legitimate business interests. See Eastex, Inc. v. NLRB, 437 U.S. 556, 574 (1978).

In June 2022, after a four-day evidentiary hearing, the Administrative Law Judge (ALJ) dismissed the complaint. The ALJ found that Bo and other store employees did not engage in *concerted* activity by placing "BLM" on their aprons because it was never coordinated or discussed among store employees. The ALJ found that Bo placed BLM on his apron before other workplace racial issues arose and employees began taking concerted action challenging the store's inadequate responses to those issues. Therefore, the apron BLM personalization "cannot reasonably be seen as a 'logical outgrowth' of the protected concerted communications regarding Gumm's misconduct and the vandalism of Black History Month displays." The BLM message "relates to the workplace only in the sense that workplaces are part of society." The BLM message was not Section 7 protected activity because it "had, at best, an extremely attenuated and indirect relationship to any workplace issue at the New Brighton store." There was no factual showing that Bo's BLM display was "directly related to working conditions."

The General Counsel filed exceptions to the ALJ's adverse decision. In February 2024, the Board reversed the ALJ, concluding that Bo engaged in protected Section 7 activity and Home Depot violated Section 8(a)(1) by directing Bo to remove "BLM" from the apron, enforcing its dress code to prohibit the display, and constructively discharging Bo by conditioning continued employment on compliance.

The Board majority's opinion shifted the analysis from Bo's decision to write "BLM" on the apron, which the complaint charged and the ALJ considered, to Bo's refusal to remove the display in the February meetings with managers. The three-member majority concluded that Bo's refusal to remove the BLM message was protected concerted activity. Although there was no showing that Bo discussed the BLM message with coworkers, other employees displayed "BLM" on their aprons

-8-

during a time when they were raising concerns about racial mistreatment in the workplace, the vandalized Black History Month displays, and Home Depot's failure to respond to those concerns. Home Depot asked Bo to remove the BLM marking during meetings at which Bo voiced group concerns about Home Depot's response to discriminatory working conditions, and Bo connected display of the BLM message to those group concerns. "Longstanding precedent establishes that an individual employee's action is 'concerted' within the meaning of Section 7 if it is a 'logical outgrowth' of employees' prior or ongoing protected concerted activity." Bo's "insistence on continuing to wear the BLM marking . . . was, at a minimum, a logical outgrowth of the employees' prior concerted activities." There was a "direct relationship" between Bo's workplace complaints about Gumm, the vandalism incidents, and refusal to remove the BLM marking. Thus, Bo's refusal to remove the marking was protected concerted activity for the purpose of "mutual aid or protection." 373 NLRB No. 25, at *7-12 (citations omitted).[2]

The Board rejected Home Depot's argument that, even if Bo's refusal to remove the BLM apron message was part of concerted activity protected by Section 7, "special circumstances" justified removal. Id. at *13-17. Home Depot argued the BLM apron display could jeopardize employee safety, exacerbate employee dissension, and unreasonably interfere with the company's established public image. The Board determined the record did not establish there was nonspeculative and imminent risk to employee safety, did not show significant employee dissension, and

---

[2]The Board majority explained: "Simply put, [Bo's] initial act of affixing BLM . . . sometime around September 2020 and . . . subsequent February 2021 insistence on continuing to display BLM . . . are separate acts in a course of conduct culminating in [Home Depot's] instruction to remove the display. . . . [T]he latter act is concerted as a logical outgrowth of employees' previous and then-ongoing protected concerted activities consistent with the allegations contained in the amended complaint. . . . Based on events on the ground at the New Brighton store . . . the BLM symbol accumulated meaning relevant to working conditions there."

-9-

did not establish that the public would view the BLM marking as reflecting views contrary to Home Depot's public image, particularly given that employees were encouraged to personalize their aprons. The Board ordered Home Depot to cease and desist from the violations and from interfering with employees' NLRA rights, to reinstate Bo with back pay, and to post a remedial notice.

Board Member Marvin Kaplan, now Board Chairman, authored a lengthy opinion dissenting in part. Home Depot, 373 NLRB No. 25, at *27-30. He questioned the majority's finding of concerted activity for the purpose of mutual aid or protection, arguing there is no evidence Bo, in displaying the BLM message, intended to "initiate, induce, or prepare for group action." The display was not linked to prior workplace complaints. Three months before Bo was hired, George Floyd was murdered by a Minneapolis police officer less than seven miles from the store:

> That tragic event and the widespread protests that ensued dramatically heightened pubic awareness of the "Black Lives Matter" movement. Particularly given the proximity, temporally and geographically, of [Bo's] display of "BLM" to those events, a reasonable person with knowledge of the relevant facts would have linked [Bo's] display of "BLM" with the Black Lives Matter movement and its goal of combating police violence against Black individuals -- not with improving terms and conditions of employment of employees at the . . . New Brighton store or otherwise improving their lot as employees.

The dissent further argued that the majority's decision denied Home Depot its due process right to "a clear statement of the theory on which the agency will proceed." The General Counsel's complaint identified the *display* of the BLM message as the protected concerted activity, whereas the Board based its decision on the *refusal* to remove it. Finally, the dissent accused the majority of "an unprecedented extension of the 'logical outgrowth' theory" in concluding that Bo's initial act that was not concerted at its inception -- placing the BLM marking on the apron -- became concerted "as a logical outgrowth of subsequent protected concerted activity."

-10-

Home Depot petitions for review, arguing Bo's BLM message was not protected Section 7 activity because it was neither concerted nor for mutual aid or protection of the store's employees; if it was protected, Home Depot did not violate Section 8(a)(1) because special circumstances justified management insisting on its removal; the Board's decision violates Home Depot's First Amendment right to free speech; and the Board's cease-and-desist remedy is an over-broad "obey the law" injunction. The Board has cross-applied for enforcement of its order.

### III. Discussion

We have jurisdiction to review the Board's decision. See 29 U.S.C. § 160(e), (f). "We exercise *de novo* review over the Board's legal conclusions, determining whether the Board started with the currently controlling law and correctly applied this law. We accept the Board's factual determinations if they are supported by substantial evidence on the record considered as a whole." Starbucks Corp. v. NLRB, 140 F.4th 971, 975 (8th Cir. 2025) (quotations omitted); see NLRB v. Noah's Ark Processors, LLC, 31 F.4th 1097, 1100 (8th Cir. 2022). For the reasons that follow, we conclude Home Depot established that the special circumstance defense to a Section 8(a)(1) violation applies. We vacate the Board's order, remand for further proceedings, and decline to reach the other issues.

**A. The Special Circumstances Defense.** "It is well established that an employer commits an unfair labor practice if it discharges employees for engaging in concerted activities that are protected by Section 7 of the NLRA, including [employee] communications to third parties or to the public that seek to 'improve their lot as employees through channels outside the immediate employee-employer relationship.'" MikLin Enters., Inc. v. NLRB, 861 F.3d 812, 818 (8th Cir. 2017), quoting Eastex, 437 U.S. at 565. Home Depot argues, as it did before the Board, that Bo's refusal to remove the BLM apron display after discussions with management about racial issues in the store was not Section 7 protected concerted employee

-11-

activity for their mutual aid or protection as employees. As the disagreement between the ALJ and the Board majority confirms, this is a difficult Section 7 issue. But we need not resolve this issue if Home Depot did not violate Section 8(a)(1) when it enforced its dress code policy and required Bo to remove the BLM message. See Cintas Corp., 589 F.3d at 914 (even if Section 7 protects an employee's concerted activity, we still must analyze whether an employer's policy was justified).

The Supreme Court held many years ago that Section 7 protections "of course, do[] not prevent an employer from making and enforcing reasonable rules covering the conduct of employees on company time" because "[w]orking time is for work." Republic Aviation Corp. v. NLRB, 324 U.S. 793, 803 n.10 (1945); see Fabri-Tek, Inc. v. NLRB, 352 F.2d 577, 586 (8th Cir. 1965). "[I]t is only when the interference with [Section] 7 rights outweighs the business justification for the employer's action that [Section] 8(a)(1) is violated." Textile Workers Union v. Darlington Mfg. Co., 380 U.S. 263, 269 (1965).

"[T]he Board has long recognized that where legitimate employer rights and interests warrant, the fact that a work rule encompasses Section 7 activity within the scope of its prohibition does not make the rule unlawful to maintain." Stericycle, Inc. & Teamsters Loc. 628, 372 NLRB No. 113, at *25 (Aug. 2, 2023). Whether to protect an employee's Section 7 interests necessarily concerns whether "the employer's management interests are adequately protected." Eastex, 437 U.S. at 574. "Accommodation between the two must be obtained with as little destruction of one as is consistent with the maintenance of the other." NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 112 (1956). To ensure proper accommodation, "[it is] necessary to examine whether there are 'special circumstances' present which rebut the presumption of [work rule] invalidity." U.S. Steel Corp., 223 NLRB 1246, 1248 (1976); see Pay'n Save v. NLRB, 641 F.2d 697, 700-02 (9th Cir. 1981) (same).

-12-

Supreme Court decisions and our cases considering this "narrow" special circumstances exception have typically concerned Section 7 protection of union solicitation activities and the display of union insignia in the workplace. See, e.g., Republic Aviation Corp., 324 U.S. 793; Beth Israel Hospital v. NLRB, 437 U.S. 483 (1978); NLRB v. Magnavox Co., 415 U.S. 322 (1974); Hudgens v. NLRB, 424 U.S. 507 (1976); Cintas Corp., 589 F.3d at 914-15. Following Supreme Court precedent, we have determined that if "an employer makes a creditable showing of special, justifying circumstances . . . the Board in weighing that evidence must . . . consider the importance of the proffered justification and thereby determine whether the actual impact of the contested [employer work] rule upon employee [Section] 7 rights mandates the invalidation of the rule." McDonnell Douglas Corp. v. NLRB, 472 F.2d 539, 545-46 (8th Cir. 1973). When an "employer can demonstrate 'special circumstances sufficient to outweigh its employees' Section 7 interests and legitimize the regulation of such insignia,' then the right of employees to wear these items 'may give way.'" In-N-Out Burger, Inc. v. NLRB, 894 F.3d 707, 714-15 (5th Cir. 2018) (quotation omitted). Courts and the Board apply the exception if permitting employees to display otherwise protected messages would "jeopardize employee safety, damage machinery or products, exacerbate employee dissension, or unreasonably interfere with a public image that the employer has established, as part of its business plan, through appearance rules for its employees." P.S.K. Supermarkets, Inc., 349 NLRB 34, 35 (2007); see ConAgra Foods, Inc. v. NLRB, 813 F.3d 1079, 1086 (8th Cir. 2016); In-N-Out Burger, 894 F.3d at 714-15.

"[It] is the primary responsibility of the Board and not of the courts to strike the proper balance between the asserted business justifications and the invasion of employee rights in light of the Act and its policy." NLRB v. Fleetwood Trailer Co., 389 U.S. 375, 378 (1967). However, we will only enforce a Board order "as long as the Board correctly applied the law, and its findings are supported by substantial evidence . . . ." MikLin Enters., 861 F.3d at 826 (quotation omitted). We require more than "lip service to the balancing of interests test." McDonnell Douglas, 472

Appellate Case: 24-1406    Page: 13    Date Filed: 11/06/2025 Entry ID: 5575556

F.2d at 547. Here, we assume without deciding the Board correctly concluded on this record that Bo's actions were protected under Section 7 and Home Depot's order to remove Bo's BLM message was otherwise invalid. But we must also review whether Home Depot was justified in enforcing its dress code rule prohibiting Bo's workplace display of "BLM" on the apron. The demonstration of a legitimate and substantial business justification is the employer's burden. We conclude the Board majority did not properly resolve this issue.

**B. Home Depot's Special Circumstances.** Home Depot argues it had valid business justifications for applying its dress code policy to Bo's BLM apron display because it reasonably believed the display would harm its relationship with customers and its public image, jeopardized employee safety, and exacerbated employee dissension. It is well established that an employer "need not await customer complaint before it takes legitimate action to protect its business." Nordstrom, Inc., 264 NLRB 698, 701 n.12 (1982); see S. New England Tel. Co. v. NLRB, 793 F.3d 93, 96 (D.C. Cir. 2015). Thus, an employer may establish a reasonable belief that the employee's message risked harm to a legitimate and substantial business interest even in the "absence of such evidence." Pathmark Stores, Inc., 342 NLRB 378, 379 (2004). But the employer must offer more than speculation, conjecture, and generalizations. See, e.g., In-N-Out Burger, 894 F.3d at 715, and cases cited.

The Board addressed Home Depot's three claims, concluding none has merit. Our standard for reviewing the Board's assessment that "special circumstances" do not justify Home Depot's enforcement of its dress code policy is whether its "conclusions rest on erroneous legal foundations." Babcock & Wilcox Co., 351 U.S. at 112. The parties do not adequately address whether the Board's decision that Home Depot failed to demonstrate the claimed special circumstances is a legal conclusion we review de novo and if review is not *de novo*, whether a less deferential standard of review is mandated by the Supreme Court's recent decision in Loper

-14-

Appellate Case: 24-1406     Page: 14     Date Filed: 11/06/2025 Entry ID: 5575556

Bright Enters. v. Raimondo, 603 U.S. 369, 412-13 (2024). We need not decide those questions but do not foreclose the issue in remanding.

This case is unlike those the Board majority cited to support its decision regarding "special circumstances." Home Depot did not attempt to prohibit the substance of Bo's message, as in cases where employers prohibited all support of union organizing at the workplace. It sought to limit display of Bo's opinions *on the employer-required uniform* to less politically charged messaging. An employer *ban* on employees displaying personal messages supporting workplace interests is categorically different from allowing such messaging, or allowing employee messages that are limited to expressions that will not harm the employer's business or threaten workplace safety. See Tesla, Inc. v. NLRB, 86 F.4th 640, 653 (8th Cir. 2023) ("[A] prohibition is a greater infringement than is a restriction"); World Color (U.S.A.) Corp. v. NLRB, 776 F.3d 17, 20-21 (D.C. Cir. 2015) (whether an employer prohibits or restricts activity is consequential); Boch Imports, Inc. v. NLRB, 826 F.3d 558, 571-72 (1st Cir. 2016) (bans are unlike restrictions for the "special circumstances" analysis); cf. Stabilus, Inc., 355 NLRB 836, 838 (2010) (an employer cannot escape Section 7 protections by requiring uniforms and prohibiting union insignia). Here, Home Depot suggested and supported multiple apron messages and actions promoting racial equality and respect in the workplace that Bo could have employed. To the extent Home Depot reasonably perceived that Bo was insisting on the BLM message because of its broader political message to society, the ALJ's conclusion that Bo's apron display was not sufficiently related to workplace issues was a reasonable accommodation of the Section 7 interests that must be balanced.

Regarding Home Depot's claim of damage to its public image, the Board majority decided that, because Home Depot did not "requir[e] employees to wear standardized aprons, but instead encourag[ed] employees to extensively personalize them, its public image defense necessarily fails." Home Depot USA, Inc., 373 NLRB No. 25, at *14 (citations omitted). Absent consistent standards for apron displays, the

Board concluded, Home Depot could not lawfully restrict disfavored messages while allowing other potentially controversial ones. But the cited cases addressed employers attempting to suppress employee expression on a particular issue, not efforts to limit expression to forms that do not pose a substantial risk to customer relations or safety. The Board failed to properly consider Bo's BLM apron display in the context of this dispute at this location at this point in time. Home Depot's restriction on how employees may display messages surrounding the movement shows only that it "did not want to allow the mass expression of a controversial message by employees in their stores." Frith v. Whole Foods Mkt., Inc., 38 F.4th 263, 275 (1st Cir. 2022). "[R]ightly or wrongly, Black Lives Matter was seen as a controversial message associated with a political movement advancing an array of policy proposals." Id. Likewise, in Noble v. Cincinnati & Hamilton Cty. Pub. Lib., a First Amendment retaliation case, a divided Sixth Circuit panel agreed that "[i]n the aftermath of the police shootings of George Floyd and others, there was nationwide debate over whether the BLM protests were an appropriate response when they resulted in alleged violence, destruction of property, and looting of businesses that had no relationship to the shootings." 112 F.4th 373, 382 (6th Cir. 2024). Cases involving employers prohibiting employee displays regarding self-organization and unions -- cornerstones of Section 7 protection -- are readily distinguishable.

The record establishes that Home Depot has a consistent apron policy that prohibits "causes or political messages unrelated to workplace matters." The NLRB countered that apron customization was allowed for "causes or political messages" such as LGBTQ-pride displays. But it is for the employer, not the Board, to determine whether personalization will be allowed because it is apolitical, appropriately demonstrates the company's values, or is related to the workplace. In this case, Home Depot evenly restricted displays of "Blue Lives Matter," other politically controversial messages, and Bo's "BLM Matters" message. And it implored Bo to select other messages -- such as DEI or Black History Month displays -- that would have the same workplace implication without broader societal political

-16-

intimations. This demonstrates consistent enforcement of its policy, not discrimination that Section 8(a)(1) declares unlawful. Home Depot "is clearly entitled to oblige its employees" to personalize aprons in ways that sustain the company's values, but "information contained on those [displays are] just as much a part of [Home Depot's] public image as any other aspect of its dress code." NLRB v. Starbucks Corp., 679 F.3d 70, 78 (2d Cir. 2012); see Fabri-Tek, 352 F.2d at 586. Home Depot may limit personalized apron displays when it reasonably perceives risk to customers that is evident and intuitive. See Pathmark Stores, Inc., 342 NLRB at 379 (2004); Noah's New York Bagels, Inc., 324 NLRB 266, 275 (1997); Komatsu Am. Corp., 342 NLRB 649, 650 (2004). The Board improperly applied precedent on balancing public image interests, effectively prohibiting an employer that provides equal alternatives and has legitimate concerns about customer perception from exercising reasonable oversight of customer-facing interactions.

Likewise, the Board majority's assessment of Home Depot's claim that it reasonably perceived a risk to employee and customer safety is incompatible with the "special circumstances" balancing test. The Board concluded that Home Depot did not present "evidence of nonspeculative, imminent risks." Home Depot USA, Inc., 373 NLRB No. 25, at *16. It noted a lack of incidents at the store despite Bo wearing the BLM message for months, and scant evidence that employees in other retail settings have been accosted for BLM messaging. We think "the Board's conclusion blinks reality." MikLin Enters., Inc., 861 F.3d at 829 (Colloton, J., concurring). Bo started wearing the BLM message in the midst of several months of protests, counter-protests, and civil unrest across the greater Minneapolis area after George Floyd's notorious murder. The ALJ summarized the environment confronting the New Brighton store managers:

> The New Brighton store is located approximately six and a half miles from where George Floyd, an unarmed black man, was murdered on May 25, 2020, by one or more officers of the Minneapolis Police Department. Floyd's murder triggered protests in May and June 2020

-17-

Appellate Case: 24-1406   Page: 17   Date Filed: 11/06/2025 Entry ID: 5575556

by, among others, persons identifying themselves with the Black Lives Matter movement and persons engaging as counter protestors. In some instances the protests and counter protests led to civil unrest in Minneapolis. Some of this unrest was visible directly outside the New Brighton store. During the protests, another store in the same shopping center as the . . . New Brighton store was looted. On two occasions, [Home Depot] found it necessary to close the New Brighton store as a result of protest-related disruptions. There was another period of heightened concern about unrest in Minneapolis before, and during, the trial in February, March, and April 2021 of an officer responsible for Floyd's death. [Management] was concerned that allowing employees to display BLM messages in a retail setting could lead to them being "involved in situations that were less than favorable, unsafe, very volatile," and, in [Bo's] case, could lead [Bo] "to receive some unwanted . . . scrutiny, verbiage . . . from a customer or from anywhere else." . . . [S]ome co-workers at the New Brighton store had expressed hostility towards Black Lives Matter/BLM. The New Brighton store has a very diverse workforce, and the most diverse workforce of the eleven stores that are part of the same Home Depot district.

Home Depot USA, Inc., 373 NLRB No. 25, at *32.

Context matters. The activity in dispute was not a display at a random location in the United States; it was not at a normal moment in time; and it was not a generic message for equal rights or employee protection. Bo's BLM message was broadcast only a few miles from the site of George Floyd's murder. Community tensions were extraordinarily high, and significant unrest and turmoil that at times closed this Home Depot store followed. Bo's BLM message divisively -- and at times violently -- split public opinion on a hot button issue, and store employees reflected the division, as some of Bo's coworkers responded with "Thin Blue Line" and "Blue Lives Matter" messages. Bo's insistence on wearing and refusing to remove the BLM message posed a clear risk to customer and employee safety. Though Bo had faced no direct threat, "the slogan reasonably threatened" the security of the workplace. Pathmark Stores, Inc., 342 NLRB at 379; see Standard Oil Co. of Cal., 168 NLRB 153 (1967),

-18-

and Andrews Wire Corp., 189 NLRB 108 (1971), where employers limited employee displays of insignia for safety reasons. Home Depot's limited apron restrictions, "in light of a recent and widely publicized" moment of civil unrest that impacted the New Brighton store, were justified. S. New England Tel. Co., 793 F.3d at 95. When the employer has made "a valid exercise of business judgment . . . it is not the province of the Board or of this court to substitute its judgment for that of management so long as the exercise is reasonable and does not interfere with a protected purpose." NLRB v. Harrah's Club, 337 F.2d 177, 180 (9th Cir. 1964). Bo was allowed, indeed encouraged, to wear other kinds of personalized racial equality pins.

Substantial evidence the Board reviewed and accepted demonstrates that Home Depot endeavored to root out racism at the store. Management confronted Gumm, attempted to correct her behavior, and ultimately dismissed her; allowed, supported, and tried to maintain a Black History Month display; repeatedly met with Bo about employee concerns and expressed its shared desire to improve working conditions in the exact ways Bo sought; encouraged Bo to help create DEI working groups; suggested multiple other messages for Bo's apron that would demonstrate support for people of color in the workplace without significant external political and social implications; and expressed a desire to retain Bo's unique perspective and passion for improving the workplace regarding racial sensitivity. "[W]hen an employer demonstrates, based on the conditions of the workplace, that curtailing the employees' right to display [messages] is necessary to its safety objectives, the Board [and courts] will dismiss allegations that the ban is unlawful." Albis Plastics & United Steelworkers, 335 NLRB 923, 924 (2001).

Here, conditions facing the New Brighton Store at this time gave rise to legitimate safety concerns. Home Depot did not "disparately enforc[e its] policy against statutorily protected activity while not enforcing it against other similar activity under similar circumstances." Stabilus, 355 NLRB at 838; see Titus Elec. Contracting, Inc., 355 NLRB 1357, 1357 (2010) (finding § 8(a)(1) violation where

Appellate Case: 24-1406    Page: 19    Date Filed: 11/06/2025 Entry ID: 5575556

employee was sent home for wearing a union shirt but others were allowed to wear shirts with nonunion logos). This was a business decision made to preserve the store's apolitical face to customers and safeguard employee safety in a risk-filled environment. The Board majority did not properly balance the competing interests and "give weight to all of the relevant factors which are involved," and it "failed to work out an adequate adjustment between [Bo's alleged Section 7] right" and the "right of [Home Depot] to maintain discipline and security in its establishment." McDonnell Douglas, 472 F.2d at 547; see Republic Aviation Corp., 324 U.S. at 797-98. Rather, the Board prioritized employee interests at the expense of Home Depot's legitimate business concerns. Tesla, Inc., 86 F.4th at 651, quoting NLRB v. Truck Drivers, 353 U.S. 87, 96 (1957). In these unique circumstances, Home Depot demonstrated that the narrow special circumstances defense should apply.

For the foregoing reasons, we vacate the Board's opinion and order and remand for further proceedings consistent with this opinion.

_____